**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF DELAWARE DEPARTMENT OF<br>HEALTH AND SOCIAL SERVICES,<br>DIVISION OF MEDICAID & MEDICAL<br>ASSISTANCE<br>Herman M. Holloway, Sr. Campus<br>Lewis Building<br>1901 North DuPont Highway<br>New Castle, DE 19720,<br><br>             Plaintiff,<br><br>     v.<br><br>UNITED STATES DEPARTMENT<br>OF HEALTH AND HUMAN SERVICES<br>200 Independence Avenue, SW<br>Washington, DC 20201,<br><br>CENTERS FOR MEDICARE<br>AND MEDICAID SERVICES<br>200 Independence Avenue, SW<br>Washington, DC 20201,<br><br>SYLVIA MATHEWS BURWELL,<br>Secretary of the United States Department<br>of Health and Human Services, in her official capacity,<br>200 Independence Avenue, SW<br>Washington, DC 20201,<br><br>      and<br><br>ANDY SLAVITT,<br>Acting Administrator for the Centers for<br>Medicare and Medicaid Services, in his official capacity,<br>200 Independence Avenue, SW<br>Washington, DC 20201,<br><br>             Defendants. | Civ. No. 16-1734 |

**COMPLAINT**

## INTRODUCTION

1. Each State administers a Medicaid program providing health care to needy individuals and families. The federal government, through the Centers for Medicare & Medicaid Services (CMS), contributes financial assistance to States for these Medicaid programs, resulting in a constant flow of funds between the States and the federal government. *See Bowen v. Massachusetts*, 487 U.S. 879, 904 n.39 (1988).

2. This case concerns over $10 million that the Delaware Department of Health and Social Services, Division of Medicaid & Medical Assistance ("Delaware," "State," or "DMMA"), the state agency responsible for administering the Medicaid program in the State of Delaware, credited to Defendant CMS in 2009 through 2011, and that CMS is now collecting yet again via a "disallowance."

3. Both CMS and the U.S. Department of Health and Human Services ("HHS") Departmental Appeals Board ("Board") have refused to permit Delaware to establish that the disallowance will result in CMS collecting twice what Delaware owes. Rather than address the merits of Delaware's position, both CMS and the Board have disclaimed the authority to review the matter by pointing to non-jurisdictional time limits which either CMS or the Board could have extended.

4. Delaware asks this Court to consider the merits of its challenge, to reverse the disallowance, and to enter an order enjoining CMS from collecting the $10 million at issue. In the alternative, the Court should set aside the July 1, 2016 Rejection of DMMA's Appeal for Untimeliness and should order the agency to reconsider the disallowance.

**JURISDICTION AND VENUE**

5. This action arises under Section 1116 of the Social Security Act, 42 U.S.C. § 1316(e)(2)(C); Section 10 of the Administrative Procedure Act, 5 U.S.C. § 704; federal common law; and equitable principles. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361.

6. Venue is proper under 42 U.S.C. § 1316(e)(2)(C) and 28 U.S.C. § 1391(e)(1).

7. There presently exists an actual controversy between Delaware and the Defendants requiring resolution by this Court.

**PARTIES**

8. The Delaware Department of Health and Social Services (DHSS) is the "single state agency" for the administration of the State of Delaware's Medicaid program; within DHSS, the Division of Medicaid & Medical Assistance has direct responsibility for administering the Medicaid Program. *See* SSA § 1902(a)(5) [42 U.S.C. § 1396a(a)(5)].

9. Defendant United States Department of Health and Human Services ("HHS") is the federal agency responsible for administering the Medicaid program.

10. Defendant Centers for Medicare and Medicaid Services ("CMS") is the agency within HHS immediately responsible for overseeing the Medicaid program at the federal level.

11. Defendant Sylvia Mathews Burwell is the Secretary of HHS and is responsible for the overall administration of the agency. She is sued in her official capacity.

12. Defendant Andy Slavitt is the Acting Administrator for CMS and is responsible for overseeing the agency. He is sued in his official capacity.

## STATUTORY AND REGULATORY BACKGROUND

**The Medicaid Program and Medicaid Funding**

13. Medicaid is a cooperative federal–state program under which the federal government provides financial assistance to assist participating States in providing health care to lower-income individuals and families. The Medicaid statute (Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq.) entitles States to reimbursement for a specified percentage of the costs they incur in providing health care to their Medicaid populations. SSA § 1903(a) [42 U.S.C. § 1396b(a)].

14. A State participating in the Medicaid program must obtain approval from CMS for a State plan for medical assistance. *Id.* § 1396a. The State receives federal reimbursement for expenditures it makes on medical assistance under this state plan. *Id.* § 1396b.

15. The federal government's share of a State's expenditures under the Medicaid program is called "federal financial participation" ("FFP"). 42 C.F.R. § 400.203; *see also* 45 C.F.R. § 95.4. The federal Medicaid statute and related regulations establish the procedures by which States receive FFP for their Medicaid expenditures.

16. Before the beginning of each fiscal quarter, each State submits to the Secretary of HHS an estimate of its anticipated Medicaid expenditures for the upcoming quarter. *See* SSA § 1903(d)(1) [42 U.S.C. § 1396b(d)(1)]; 42 C.F.R. § 430.30(b). Based on this estimate, the Secretary awards the State a grant which authorizes the State to draw down funds as needed to pay the Federal government's share of the State's expenditures for medical assistance. *See* 42 C.F.R. §§ 430.30(a), (d)(3).

17. Within 30 days after the end of each quarter, the State submits a Form CMS-64 ("Quarterly Medicaid Statement of Expenditures for the Medical Assistance Program" or "QSE") on which the State reports its actual recorded expenditures for the quarter. *See id.* §§

4

430.30(c)(1)–(2).  The QSE is also the vehicle for making adjustments for any identified overpayment or underpayment to the State.  *See* 42 U.S.C. § 1396b(d)(2)(A); *see also* 42 C.F.R. § 433.320(a); CMS, State Medicaid Manual § 2500(A).

**Collection and Crediting of Third-Party Liability Overpayments**

18.  The Medicaid program is a payor of last resort.  As such, State Medicaid programs take "all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available" under Medicaid.  *See* SSA § 1902(a)(25)(A) [42 U.S.C. § 1396a(a)(25)(A)].  If "legal liability is found to exist after medical assistance has been made available . . . the State . . . will seek reimbursement for such assistance."  *Id.* § 1396a(a)(25)(B).

19.  If the Medicaid program pays for health care services for which the State later receives reimbursement from a third party, the original Medicaid payments are considered "overpayments" and the State must refund to the Federal government its share of these expenditures.  *See* SSA § 1903(d)(2)(B) [42 U.S.C. § 1396b(d)(2)(B)] ("Expenditures for which payments were made to the State . . . shall be treated as an overpayment to the extent that the State or local agency administering such plan has been reimbursed for such expenditures by a third party pursuant to the provisions of its plan in compliance with [SSA] section 1902(a)(25)."); *see also* 42 C.F.R. § 433.140(c) ("If the State receives FFP in Medicaid payments for which it receives third party reimbursement, the State must pay the Federal government a portion of the reimbursement determined in accordance with the [Federal Medical Assistance Percentage] FMAP for the State."); *id.* § 433.312 ("Basic requirements for refunds").

**60-Day Time Limit to Seek Reconsideration or to Appeal a Disallowance**

20.  CMS may "disallow" a State's claim for FFP if it "determines that a claim or portion of claim is not allowable . . . ." 42 C.F.R. § 430.42(a).  The disallowance notice requests that the

State "make appropriate adjustment in a subsequent [QSE]." *Id.* § 430.42(a)(7). If a State does not credit CMS with overpayments, then CMS will disallow expenditures equal to the determined overpayment amount.

21. As a general rule, a State has 60 days from the date of receipt of a disallowance to seek reconsideration from CMS. SSA § 1116(e) [42 U.S.C. § 1316(e)]. If a State seeks reconsideration, CMS regulations require that the State complete or withdraw from the process before seeking Board review. 42 C.F.R. § 430.42(b)(6). If the State receives an unfavorable reconsideration decision, it has an additional 60-day period from the date of receipt of the unfavorable decision to appeal to the Board. SSA § 1116(e)(2)(A).

22. In the alternative, a State may appeal a disallowance decision to the Board without first seeking CMS reconsideration. *Id.* In that case, the State has 60 days from the date it received the disallowance to appeal to the Board. *Id.*

## FACTUAL BACKGROUND

**Delaware's Medicaid Program and Third Party Liability (TPL) Collections**

23. The Delaware Division of Medicaid & Medical Assistance (DMMA) is the agency charged with running Delaware's Medicaid Program. Approximately 230,000 individuals are enrolled in Medicaid in Delaware, which accounts for nearly 1 out of every 4 State residents.

24. As required by SSA § 1902(a)(25)(A), DMMA determines when third parties have a legal obligation to pay all or part of the expenditures for medical assistance furnished to Medicaid enrollees and collects those third party payments through a variety of means. Because these third party liability (TPL) payments are treated as overpayments, Delaware credits CMS for the federal share of any payments so collected.

25. The State Medicaid Manual published by CMS contemplates that third party liability collections will be separately reported on the State's QSE forms. However, historically,

6

Delaware's Medicaid Management Information System (MMIS) has not had the functionality to separately identify specific overpayment collections apart from other collections.  Because of this technological limitation, the State nets its TPL collections against its expenditures and claims FFP only in the net amount.  In this way, the State fully credits CMS for the overpayments the State collects even though they are not separately reported.

26. In 2004, the HHS Office of Inspector General ("OIG") issued a report entitled "Review of Delaware's Accounts Receivable System for Medicaid Provider Overpayments". HHS, OIG, A-03-04-00205, REVIEW OF DELAWARE'S ACCOUNTS RECEIVABLE SYSTEM FOR MEDICAID PROVIDER OVERPAYMENTS (Oct. 2004) [hereinafter "2004 OIG Report"], *available at* https://oig.hhs.gov/oas/reports/region3/30400205.pdf .  The 2004 OIG Report described Delaware's system as follows:

> The Department does not have an accounting system that separately identifies collected overpayments from other collections. Through its fiscal agent, the Department enters each overpayment identified after June 30, 2003 into the MMIS as an account receivable. The MMIS is not set up to separate overpayment collections from other collections, but instead consolidated all account receivables collected through recoupments, refunds and voided claims. The Department then netted the collections against expenditures reported on the CMS-64.

*Id.* at 6.

27. Although the 2004 OIG Report determined that the State of Delaware had not separately reported the federal share of overpayment adjustments it had received on its CMS-64 (as contemplated the Medicaid Manual), the OIG did not recommend a disallowance.  *Id.*

28. Accordingly, Delaware continued its process for netting out TPL receivables against its Medicaid expenditures while it prepared to update its MMIS system.  Delaware decided to incorporate the needed changes as part of the reprocurement of its MMIS system, a process that

can take several years even under the best of circumstances. The new MMIS is now scheduled to go live this coming January.

**2012 OIG Audit**

29. While the State's efforts to implement a new MMIS were underway, the OIG conducted another audit of DMMA's Medicaid reporting. That audit resulted in a June 2012 Report that is the basis of the disallowance that DMMA is currently appealing. *See* HHS, OIG, A-03-11-00203, Delaware Did Not Comply with Federal Requirements To Report All Medicaid Overpayment Collections (June 2012) [hereinafter "2012 OIG Report"], *available at* https://oig.hhs.gov/oas/reports/region3/31100203.pdf. Like the 2004 OIG Report, the 2012 OIG Report concluded that Delaware had not reported the federal share of overpayments as a separate credit to the federal government. Unlike the 2004 OIG Report, however, the 2012 OIG Report recommended that Delaware be required to return the federal share of any collections that had not been reported separately on the QSE.

30. The OIG acknowledged that Delaware had shown that its TPL collections were entered into the MMIS system as overpayments, 2012 OIG Report at 7, but the OIG contended that the State could not show "that the *specific* Medicaid overpayments" the OIG had reviewed had been carried through to the netted expenditures reported on the QSE. *Id.* (emphasis added). The OIG recommended that Delaware return the federal share of the $16,293,609 in overpayments it had collected ($10,080,378) to CMS. *Id.* at i–ii.[1]

31. DMMA objected to the OIG's findings and recommendation that it refund the $10,080,378, noting that the State was "certain that net expenditures reported on the [QSE]

---

[1] The OIG recommended that Delaware also return $2,391 in FFP due to an unrelated calculation error. *Id.*

reflect overpayment collections" and that the State had provided the OIG with detailed, transaction-level reports demonstrating that the MMIS process netted out recoupments from expenditures. *Id.*, App'x.

32. DMMA did not receive any further correspondence from CMS or the OIG related to this report for more than two years.

**CMS Issues Disallowance and Delaware Seeks Reconsideration**

33. On September 24, 2014, CMS sent the disallowance notice to DMMA that is the subject of this appeal.

34. At the time the letter was received, DMMA was involved in an unprecedented number of mission-critical matters, the most pressing of which was the fact that DMMA had been unable to successfully renegotiate a contract with one of its two Managed Care Organizations ("MCOs"). The MCO serviced roughly two-thirds of Delaware's Medicaid population and its withdrawal thus threatened access to care for a large majority of Delaware's Medicaid enrollees. DMMA staff and senior management had to coordinate a major implementation and transition effort including open enrollment and readiness review for a new MCO. Coordinating care with providers and the new MCOs—one of which had never serviced certain populations before—was extraordinarily time consuming and required longer hours to be kept throughout DMMA, from call center personnel to senior management. This transition occurred between September 2014 and January 2015.

35. Due to the press of the other matters with which it was dealing, DMMA missed the deadline to seek reconsideration of the disallowance by less than two weeks.

36. DMMA immediately initiated efforts to secure an extension of the reconsideration period from CMS.  DMMA contacted CMS on December 9, 2014, and again on December 12, 2014, to secure additional time to request reconsideration.

37. DMMA and other state officials repeatedly and vigorously engaged CMS to obtain administrative reconsideration or some other resolution of the disallowance.  Delaware took these efforts so seriously that the Governor of Delaware contacted the Secretary of Health and Human Services directly to request that she reconsider the Department's position.

38. CMS rebuffed these efforts, erroneously asserting that the agency "does not have the authority to allow reconsideration beyond the 60 day time period allowed by statu[t]e."

39. Finally, on January 20, 2016, after numerous discussions and correspondence between the State and CMS, CMS informed DMMA that it would not reconsider the disallowance.

40. On March 1, 2016, the State also filed an appeal with the Board.  Although Delaware filed its appeal within 60 days of receiving CMS's final denial of the State's request for reconsideration, the State simultaneously moved to extend the appeal deadline in the event that the Board considered the appeal to be untimely.

41. In support of its motion to extend the appeal deadline, Delaware noted that the statutory time limit for appeals to the Board is not jurisdictional.  CMS conceded that this was true, but nevertheless argued that the Board was without authority to extend the deadline on other grounds.

**The Board Denies Delaware Review on the Merits**

42. In a decision dated July 1, 2016, Board Chair Constance B. Tobias rejected DMMA's appeal for untimeliness.  (A copy of the Board's decision is attached hereto as Exhibit A.)

Chairwoman Tobias did not dispute that the 60-day timeline is non-jurisdictional. Instead the decision incorrectly assumed that Delaware's appeal was "more than one year and three months late," as judged from the date on which Delaware could have appealed if it had not pursued the reconsideration process. Exhibit A, at 2–3. The Board's decision failed to acknowledge that Delaware had missed the deadline for seeking reconsideration by less than two weeks and that CMS regulations required the State, once it had elected to seek reconsideration, to complete or withdraw from the process before seeking Board review. 42 C.F.R. § 430.42(b)(6).

43. Although the Board acknowledged that DMMA had spent considerable time seeking reconsideration from CMS, the decision did not recognize that DMMA did so because the State viewed the time limit as non-jurisdictional and believed that CMS had authority to extend the deadline.

44. The Board concluded that Delaware's appeal was untimely and that good cause had not been shown to extend the deadline for appeal.

45. While the reconsideration and appeal process were pending, Delaware entered into a repayment schedule with CMS. Absent an Order by this Court preventing CMS from enforcing the disallowance, Delaware will pay approximately $1,861,868 per quarter for six quarters, with the final payment to be made by December 31, 2017. With interest, Delaware will pay CMS a total of $11,171,208.

## COUNT I

**(Administrative Procedure Act: Violation of the Medicaid Statute and Regulations and Arbitrary and Capricious Agency Action – Against Defendants HHS and Burwell Only)**

46. Paragraphs 1 through 45 above are incorporated herein by reference.

47. The disallowance of $10,082,769 was arbitrary and capricious, an abuse of discretion, and contrary to law.

## COUNT II

**(Administrative Procedure Act: Violation of the Medicaid Statute and Regulations and Arbitrary and Capricious Agency Action – Against Defendants HHS and Burwell Only)**

48. Paragraphs 1 through 47 above are incorporated herein by reference.

49. CMS's refusal to entertain Delaware's request for an extension of time to seek reconsideration of the disallowance was arbitrary and capricious, an abuse of discretion, and contrary to law. CMS incorrectly asserted that it lacked authority to extend the deadline.

## COUNT III

**(Administrative Procedure Act: Violation of the Medicaid Statute and Regulations and Arbitrary and Capricious Agency Action – Against Defendants HHS and Burwell Only)**

50. Paragraphs 1 through 49 above are incorporated herein by reference.

51. The Board's refusal to grant Delaware a good cause waiver of the appeal deadline was arbitrary and capricious, an abuse of discretion, and contrary to law.

## COUNT IV

**(Unjust Enrichment – Against All Defendants)**

52. Paragraphs 1 through [51] above are incorporated herein by reference.

53. Delaware has entered into a payment plan under which it must pay defendants $10,082,769 that Delaware has already previously credited to CMS, as well as an estimated $1,088,439 in interest. This confers upon defendants a benefit to which they were not entitled.

54. Delaware notified Defendants that the State had already credited CMS with the entire $10,082,769 that CMS argues the State owes, and Delaware demanded that CMS reverse the disallowance in this amount. Delaware reasonably expected to be paid for its Medicaid expenditures without a reduction for credits the state had already made to CMS.

55. Defendants refused Delaware's demand.

56. In justice and equity, the funds in question belong to Delaware, and Defendants have no right to retain the funds.

57. Defendants have been unjustly enriched at Delaware's expense.

## COUNT V

### (Money Had and Received – Against All Defendants)

58. Paragraphs 1 through 57 above are incorporated herein by reference.

59. Delaware has entered into a payment plan under which it must pay defendants $10,082,769 that Delaware has already previously credited to CMS, as well as an estimated $1,088,439.  This confers upon defendants a benefit to which they were not entitled.

60. Delaware notified Defendants that the State had already credited CMS with the entire $10,082,769 that CMS argues the State owes, and Delaware demanded that CMS reverse the disallowance in this amount.  Delaware reasonably expected to be paid for its Medicaid expenditures without a reduction for credits the state had already made to CMS.

61. Defendants refused Delaware's demand.

62. Defendants have no right in equity or good conscience to retain the $10,082,769 that Delaware is repaying or the approximately $1,088,439 in interest that Delaware will also pay.

**REQUEST FOR RELIEF**

WHEREFORE, Delaware requests that this Court grant the following relief:

    A.      Permanently enjoin Defendants and their agents, employees, successors in office, and all persons acting in concert or participation with them, from recouping or seeking to recoup any portion of the $10,082,769 that Delaware has already credited to CMS or any interest payments which CMS asserts are owed as a result of the disallowance;

    B.      Permanently enjoin Defendants and their agents, employees, successors in office, and all persons acting in concert or participation with them, from failing or refusing to return any portion of the $10,082,769 plus interest that Delaware has begun to pay to CMS under the current repayment schedule;

    C.      In the alternative to (A) and (B), set aside the Rejection of Appeal of Untimeliness dated July 1, 2016 and order the HHS Departmental Appeals Board to consider Delaware's appeal on the merits;

    D.      Award Delaware such declaratory and other relief as may be just and proper;

    E.      Award Delaware the costs of this action, including attorneys' fees; and

    F.      Retain jurisdiction over this action for such additional and supplemental relief as may be required to enforce the order and judgment.

Respectfully submitted,

 /s/ Caroline M. Brown
Caroline M. Brown (D.C. Bar No. 438342)
Paige M. Jennings (D.C. Bar No. 1018246)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street NW
Washington, DC 20001-4956
Tel:  (202) 662-6000
Fax:  (202) 662-6291
cbrown@cov.com


 /s/ Sarah F. Goncher
Sarah F. Goncher (D.E. Bar No. 5481)
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 19801
Tel:     (302) 577-8188
Fax:    (302) 577-6630
sarah.goncher@state.de.us

August 26, 2016                              *Attorneys for Plaintiff Delaware Division of Medicaid & Medical Assistance*