# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STATE OF DELAWARE DEPARTMENT OF HEALTH AND SOCIAL SERVICES, DIVISION OF MEDICAID & MEDICAL ASSISTANCE, <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br> *Defendants.* | Civil Action No. 16-1734 (CKK) |

## MEMORANDUM OPINION AND ORDER
(August 8, 2017)

The pending case raises a thicket of regulatory and jurisdictional issues. Plaintiff is the entity charged with administering Delaware's Medicaid program. Due to a technological limitation, Delaware's computer systems were unable to separately report certain collections that the State made from third-parties. Part of these collections were owed to the federal government. Plaintiff addressed this technological limitation by simply netting these collections from its Medicaid expenditures, and only seeking federal funding based on the net amount. The federal government issued two reports warning Delaware that this approach was unacceptable, principally because there was insufficient evidence that the relevant collections were actually being netted, and that the federal government was receiving due credit. Not long after the second report was issued, the federal government "disallowed" $10,080,378 in federal funding, equal to what it viewed as the amount that Delaware had failed to credit the federal government from third-party collections. Delaware sees this is a manifest injustice, believing that it has already credited the federal government with this amount, and must now double pay.

1

Despite this indignation, however, Delaware missed the deadline to seek administrative review of the disallowance determination by two weeks. After a lengthy period during which Delaware allegedly sought a retroactive extension of the filing deadline, Delaware filed an appeal with the Departmental Appeals Board (the "Board"), which summarily rejected the appeal for untimeliness. Plaintiff sought review of the rejection before this Court, and Defendants moved to dismiss, principally on the basis that judicial review was unavailable. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court shall **GRANT-IN-PART** and **DENY-IN-PART** the motion to dismiss.

The Court finds that it has subject-matter jurisdiction under 42 U.S.C. § 1316(e)(2)(C) to exert judicial review over the Board's decision to reject Plaintiff's appeal, and that under a standard of review set by the Administrative Procedure Act ("APA"), Plaintiff has stated a plausible claim that the Board's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Given the availability of an adequate remedy at law, however, Plaintiff's common law claims for unjust enrichment and for money had and received are dismissed without prejudice because they sound in equity, among other considerations.

---

[1] The Court's consideration has focused on the following documents:

- Defs.' Mem. Of Points & Authority in Supp. of. Defs.' Mot. to Dismiss, ECF No. 13-1 ("Defs.' Mem.");
- Delaware's Mem. of Points & Authorities in Opp'n to Defs.' Mot. to Dismiss, ECF No. 14 ("Pl.'s Opp'n"); and
- Mem. in Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. 16 ("Defs.' Reply").

Finally, the alleged APA violations were pled only against Defendants United States Department of Health and Human Services ("HHS") and the Secretary of the United States Department of Health and Human Services (the "Secretary"). *See* Compl., Counts I–III. Only the common law claims were brought against the other two Defendants, the Centers for Medicare and Medicaid Services ("CMS"), and the Administrator for the Centers for Medicare and Medicaid Services (the "Administrator"). *Id.*, Counts IV–V. Accordingly, CMS and the Administrator are dismissed from this lawsuit without prejudice.

## I. BACKGROUND

### A. Statutory and Regulatory Background

#### 1. Medicaid

Medicaid is a cooperative federal-state program through which the federal government provides financial assistance for States to furnish medical care to low-income families and individuals. *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 502 (1990). In order to participate in Medicaid, a State must first develop a Medicaid plan "describing conditions of eligibility and covered services." *Bowen v. Massachusetts*, 487 U.S. 879, 883 (1988). That plan must then be approved by CMS. 42 U.S.C. § 1396a.

Once approved, the federal government pays the State on a quarterly basis for a specified percentage of the State's Medicaid expenditures. *Id.* § 1396b. This financial contribution is called the "federal financial participation" ("FFP"). The quarterly federal contribution is made as an advance payment "based on the State's estimate of its anticipated future expenditures." *Bowen*, 487 U.S. at 883–84. Then, within 30 days after the end of the quarter, the State must submit a Form CMS-64, entitled the Quarterly

Medicaid Statement of Expenditures for the Medical Assistance Program ("QSE"), on which the State reports its actual expenditures for the quarter. *See* 42 C.F.R. §§ 430.30(c)(1)–(2).

Because the Medicaid program is a payor of last resort, the State is responsible for recovering payments from third-parties that were legally obligated to cover medical care that was ultimately paid for the by the State. 42 U.S.C. § 1396a(a)(25)(A). If the State receives federal funds for services for which it later recovers monies from third-parties, the corresponding federal contributions are considered "overpayments" and the State must refund those amounts to the federal government. 42 U.S.C. § 1396b(d)(2)(B). The State must report and refund overpayments through a credit to the federal government on its quarterly QSE. 42 C.F.R. § 433.320(a)(1). If a State does not credit the federal government with overpayments, then CMS "will disallow expenditures equal to the determined overpayment amount." Compl. ¶ 20; *see* 42 U.S.C. § 1316(d); 42 C.F.R. § 430.42(a) (describing disallowance procedure).

### 2. *Reconsideration and Appeals Process*

Section 1316(e) and accompanying regulations set forth two routes for the State to contest a disallowance determination. The first route is the reconsideration process, which allows the State to request "reconsideration of the disallowance, provided that such request is made during the 60-day period that begins on the date the State receives notice of the disallowance." 42 U.S.C. § 1316(e)(1). Within 60 days of receiving the request for reconsideration, the Administrator "shall . . . issue a written decision or a request for additional information . . . ." *Id*. § 430.42(c)(2). If the State is required to submit additional information, the Administrator "shall issue a written decision, within 60 days from the due

4

date of such information." *Id.* § 430.42(c)(5). The final written decision "shall constitute final CMS administrative action on the reconsideration." *Id.* § 430.42(b)(6). If the State receives an adverse reconsideration decision, it may then appeal "during the 60-day period that begins on the date the State receives notice of . . . the unfavorable reconsideration . . . to the Departmental Appeals Board." 42 U.S.C. § 1316(e)(2)(A); 42 C.F.R. § 430.42(b)(5) ("The State may . . . seek reconsideration, and following the reconsideration decision, request a review from the Board.").

The second option—the appeal route—permits the State to bypass the reconsideration process and appeal the disallowance decision directly to the Departmental Appeals Board. 42 U.S.C. § 1316(e)(2)(A) ("A State may appeal a disallowance . . . during the 60-day period that begins on the date the State receives notice of the disallowance . . . by filing a notice of appeal with the Board."); 42 C.F.R. § 430.42(b)(4) ("The State is not required to seek reconsideration before seeking review from the Departmental Appeals Board."). The State may pursue either the reconsideration route or the appeal route, but may not pursue both at the same time. If the State "elects reconsideration, the reconsideration process must be completed or withdrawn before requesting review by the Board." 42 C.F.R. § 430.42(b)(6).

Whether on direct appeal, or following the reconsideration process, the statute directs the Board to "conduct a thorough review of the issues, taking into account all relevant evidence." *Id.* The Board's decision of an appeal is "the final decision of the Secretary." 42 U.S.C. § 1316(e)(2)(B). Either party may then move the Board to reconsider its "final decision" within 60 days of the Board's decision "upon a motion by either party that alleges a clear error of fact or law." *Id.*; 42 C.F.R. § 430.42(f).

Finally, a State may "obtain judicial review of a decision of the Board by filing an action in any United States District Court located within the appealing State . . . or the United States District Court for the District of Columbia," by filing such an action within 60 days of the Board's decision. 42 U.S.C. § 1316(e)(2)(C).

## B. Factual and Procedural Background

Plaintiff is the agency charged with administering Delaware's Medicaid program. Compl. ¶ 23. As a result, Plaintiff is required to collect payments from third-parties who are legally obligated to pay the expenses of Medicaid participants who have received government funding. *Id.* ¶ 24. Such recoveries are treated as overpayments, and must therefore be credited to the federal government on Delaware's quarterly QSEs. *Id.* ¶¶ 24–25.

Overpayments are supposed to be separately reported on the QSEs. *Id.* ¶ 25. However, the computer system that Delaware used to track collections from third-parties was unable to distinguish between overpayments and other types of collections. *Id.* To address this technological limitation, Delaware simply netted all of its collections from third-parties against its total Medicaid expenditures, and reported the net amount as its claim for federal assistance. *Id.* In Delaware's view, this approach resulted in the federal government receiving full credit for overpayments collected by the State, even though they were not separately reported on the quarterly QSEs. *Id.*

The HHS Office of Inspector General ("OIG") disagreed. First, in 2004, OIG issued a report finding that Delaware had not separately reported overpayments on its quarterly QSEs. *Id.* ¶ 27 (citing Review of Delaware's Accounts Receivable System for Medicaid Provider Overpayments (Oct. 2004) ("2004 OIG Report"), *available at*

https://oig.hhs.gov/oas/reports /region3/30400205.pdf ). The report found that Delaware had not "accurately report[ed] provider overpayments" and recommended that Delaware "establish an adequate integrated accounting system that records, ages and accurately reports overpayments . . . ." 2004 OIG Report, at 5–6.  Although Delaware decided to implement changes to its computer system, the new system was not expected to become operational until January 2017. Compl. ¶ 28.

OIG issued another report in 2012. *Id*. ¶ 29 (citing Delaware Did Not Comply with Federal Requirements To Report All Medicaid Overpayment Collections (June 2012) ("2012 OIG Report"), *available at* https://oig.hhs.gov/oas/reports/region3/31100203. pdf"). As relevant here, the second report found that Delaware had failed to report $10,080,378 in overpayments that were owed to the federal government. 2012 OIG Report, at 3. OIG recognized that Delaware netted its aggregate collections from third-parties against expenditures, and reported only the net amount of expenditures to the federal government. *Id*. at 5. However, it concluded that State officials "could not provide support for this explanation," and that the State "did not have internal controls to verify or track the collections once they entered the" computer system. *Id*.; *see also id*. at 7 (finding that Delaware "did  not support that the specific Medicaid overpayments [that OIG] reviewed had, in fact, been carried through to the netted expenditures"). Delaware disputes this finding, contending that it was "certain that net expenditures reported . . . reflect overpayment collections." *Id.* App'x (Letter from Rosanne Mahaney to Stephen Virbitksky, dated Mar. 14, 2012).

On September 24, 2014, based principally on the findings of the 2012 OIG Report, CMS sent Plaintiff "an official notice of a disallowance in the amount of $10,082,769."

Defs.' Mem., Ex. A, ECF No. 13-2, at 2. Although Plaintiff sought reconsideration of the disallowance, it concedes that it missed the 60-day deadline for filing a request for reconsideration by approximately two weeks, allegedly "[d]ue to the press of . . . other matters . . . ." Compl. ¶ 35. In December 2014, Plaintiff "initiated efforts to secure an extension of the reconsideration period from CMS . . . ." *Id.* ¶ 36. More than one year later, on January 20, 2016, "CMS informed [Plaintiff] that it would not reconsider the disallowance." *Id.* ¶ 39. On March 11, 2016, Plaintiff filed an appeal with the Board,[2] and simultaneously "moved to extend the appeal deadline in the event that the Board considered the appeal to be untimely." Compl. ¶ 40.

A "Rejection of Appeal for Untimeliness" was issued to Plaintiff on July 1, 2017 by Constance B. Tobias, Chair of the Departmental Appeals Board. Compl., Ex. A ("Rejection Letter"). The Chair found that Plaintiff had filed its appeal "more than one year and three months after Delaware's notice of appeal was due," and consequently well past the 60-day deadline for filing an appeal directly with the Board. Rejection Letter, at 1–2. The Chair also rejected Plaintiff's request for an extension of the filing deadline, holding that Plaintiff had "not given a good reason for its protracted delay." *Id*. at 3. Within 60 days of the issuance of the Rejection Letter, Plaintiff filed this action.

---

[2] Although Plaintiff alleges in the complaint that it filed the appeal on March 1, 2016, Defendants point out that the correct date was March 11, 2016. Defs.' Mem. at 9 n.3 (citing Compl., Ex. A, at 1). However, either date falls within 60 days of January 20, 2016, the date on which Plaintiff alleges CMS informed Plaintiff that it would not reconsider the disallowance. Compl. ¶ 39.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), Plaintiff bears the burden of establishing that the Court has subject-matter jurisdiction over its claims. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007); *Ctr. for Arms Control & Non-Proliferation v. Redd*, No. CIV.A. 05-682 (RMC), 2005 WL 3447891, at *3 (D.D.C. Dec. 15, 2005). A court's decision regarding its "subject-matter jurisdiction necessarily precedes a ruling on the merits . . . ." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted); *see also* Charles Alan Wright & Arthur R. Miller, 5B Federal Practice & Procedure § 1350 (3d ed. 2017) (noting the "wide array of cases from the four corners of the federal judicial system involving the district court's broad discretion to consider relevant and competent evidence on a motion to dismiss for lack of subject matter jurisdiction to resolve factual issues"). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal quotation marks omitted).

### B. Motion to Dismiss for Failure to State a Claim

Defendants also move to dismiss the Complaint for "failure to state a claim upon which relief can be granted" pursuant to Federal Rule of Civil Procedure 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F.Supp.2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted). The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III. DISCUSSION

### A. The Court Has Subject-Matter Jurisdiction Under Section 1316(e)

Plaintiff has presented a multitude of alleged jurisdictional bases in the complaint and the briefing on the pending motion to dismiss. These include mandamus (28 U.S.C. § 1361), equity, general federal question jurisdiction (28 U.S.C. § 1331), and the APA. The

Court, however, sees the jurisdictional question through a narrower lens. Section 1316(e)(2)(C) provides for judicial review of Board decisions:

> A State may obtain judicial review of a decision of the Board by filing an action in . . . the United States District Court for the District of Columbia. Such an action may only be filed . . . if no motion for reconsideration was filed within the 60-day period specified in subparagraph (B), during such 60-day period.

42 U.S.C. § 1316(e)(2)(C). Accordingly, for the Court to exert judicial review, Plaintiff must have received "a decision of the Board" and must have brought an action in this district within 60 days of the date on which the decision was rendered. The parties agree that this action was filed within the applicable time period. They only disagree over whether the Rejection Letter constitutes "a decision of the Board."

There is a paucity of case law on section 1316(e)(2)(C). Fortunately, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has provided substantial guidance with respect to an analogous statute in the Medicare context. Under the Medicare statute, 42 U.S.C. § 1395 *et seq.*, "providers are reimbursed for the cost of the services they provide to qualified Medicare beneficiaries" based on agreements with HHS. *Athens Community Hospital v. Schweiker*, 686 F.2d 989, 991 (D.C. Cir. 1982). HHS has appointed a "fiscal intermediary" who "acts as the Secretary's agent for the purpose of reviewing claims and awarding reimbursement." *Id.* (citing 42 U.S.C. § 1395h). At the end of the fiscal year, the fiscal intermediary reviews the providers' claims and awards reimbursement. *Id.* If the provider disagrees with the reimbursement award, it may appeal to the Provider Reimbursement Review Board ("PRRB"). The PRRB will review determinations of the fiscal intermediary "only if (1) the provider has filed a timely cost report; (2) the amount in controversy is $10,000 or more, and (3) the appeal is filed within

180 days." *Id.* (citing 42 U.S.C. § 1395oo(a)). Section 1395oo(f)(1) provides for judicial review with respect to the PRRB:

> Providers shall have the right to obtain judicial review of any final decision of the [PRRB], or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the [PRRB] or of any reversal, affirmance, or modification by the Secretary is received . . . . Such action shall be brought in the district court of the United States for the judicial district in which the provider is located or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of Title 5 . . . .

42 U.S.C. § 1395oo(f)(1).

In *Athens*, the D.C. Circuit considered whether a decision by the PRRB not to assert jurisdiction constituted a "final decision" subject to judicial review pursuant to section 1395oo(f)(1). *Athens*, 686 F.2d at 993. Relying principally on the out-of-circuit authority *Cleveland Memorial Hospital, Inc. v. Califano*, 444 F. Supp. 125 (E.D.N.C. 1978), *aff'd*, 594 F.2d 993 (4th Cir. 1979), the court held that such a decision was "final" and that the court therefore had subject-matter jurisdiction. First, the court found persuasive the argument that "if a refusal by the PRRB to exercise jurisdiction were not reviewable, the PRRB could effectively preclude any judicial review of its decisions simply by denying jurisdiction of those claims that it deems to be non-meritorious." *Id.* (internal quotation marks and citations omitted). Second, the court found persuasive the analogy between judicial review of the PRRB's decision and the authority of the courts of appeals to review "final decisions" of the district courts, noting that dismissals for lack of jurisdiction by district courts have "consistently been understood as 'final decisions.'" *Id.* The D.C. Circuit concluded that:

[A] decision by the PRRB refusing to exercise jurisdiction is, for the purpose of 42 U.S.C. § 1395oo(f)(1), a final decision sufficient to permit judicial review. The reasoning of the court in *Cleveland Memorial* is especially persuasive. Moreover, while the Medicare Act and, in particular, 42 U.S.C. § 1395oo(f)(1) are structured so as to limit judicial review, there is nothing in either the statute or the legislative history which suggests that such review is limited exclusively to substantive issues. *Thus, if the threshold requirements of 42 U.S.C. § 1395oo(f)(1) are met, a court has jurisdiction to review a decision by the PRRB that it lacks jurisdiction to review a determination of the fiscal intermediary.*

*Id.* (emphasis added).

This issue was revisited by the D.C. Circuit in *Auburn Regional Medical Center v. Sebelius*, 642 F.3d 1145 (D.C. Cir. 2011), *rev'd on other grounds*, 568 U.S. 145, 157 (2013). In *Auburn*, Medicare providers contested the rate at which they had been reimbursed for the fiscal years 1987–1994 based on a discovery in an unrelated case that CMS had miscalculated rates for similar providers during that time period. *Id.* at 1147. The providers petitioned the PRRB in 2006, significantly outside of the 180-day appeals window. *Id.* The PRRB held that the providers' "untimely" claim was beyond its jurisdiction and declined to review the merits of the claim. *Id.* In assessing whether it had subject-matter jurisdiction, the district court relied on *Athens*, and read that case to hold that "a plaintiff may obtain judicial review of a PRRB refusal to exercise jurisdiction only if an administrative appeal has been filed within the 180-day limitations period." *Auburn Regional Medical Center v. Sebelius*, 686 F. Supp. 55, 64 (D.D.C. 2010). On this issue, the D.C. Circuit reversed the district court, reaffirming the holding in *Athens* that "a decision of the PRRB denying jurisdiction is a final decision subject to judicial review," reasoning that "[s]uch a dismissal is final in any sense of the word. It is not pending, interlocutory, tentative, conditional, doubtful, unsettled or otherwise indeterminate. It is done." *Auburn*, 642 F.3d at 1148. For purposes of assessing the availability of *judicial review*, the D.C.

Circuit held that it was irrelevant whether plaintiff had filed its PRRB petition within the 180-day period set by statute, holding that section "1395oo(f)(1) only requires that 'a civil action [be] commenced within 60 days' of the PRRB's 'final decision.' It says nothing about the 180–day limitations period [for appealing to the PRRB]." *Id*. at 1147 (first alternation in original).

In light of these authorities, the question before the Court is a narrow one: are the threshold requirements of section 1316(e)(2)(C) satisfied such that the Court can exert judicial review. As already noted, the parties do not dispute that this action was filed within the 60-day period for seeking judicial review. Rather, they differ over whether the Rejection Letter constitutes a Board "decision" subject to judicial review. Defendants principally rely on the fact that the Rejection Letter was issued solely by the Chair of the Board, and not by three board members. As support, Defendants point to the regulations under section 1316(e). One of these provides that "[e]ach decision is issued by three Board members (see § 16.5(b)) . . . ." 45 C.F.R. § 16.21(a). Section 16.5(b), in turn, provides that "[e]ach decision of the Board is issued by the presiding Board member and two other Board members." 45 C.F.R. § 16.5(b).

However, Defendants have not explained why the Court should defer to the agency's interpretation of the word "decision" in section 1316(e)(2)(C). The D.C. Circuit, for one, has held that "an agency's interpretation of a statutory provision defining the jurisdiction of the court [is not] entitled to . . . deference under *Chevron*." *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1038 (D.C. Cir. 2002) (citing *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649 (1990) ("even if [the] language establishing a private right of action is ambiguous, we need not defer to the Secretary of Labor's view of the scope of

[the statute] because Congress has expressly established the Judiciary and not the Department of Labor as the adjudicator of private rights of action arising under the statute")). Furthermore, the regulations are not as clear as Defendants would have. The definitional section provides that "[r]eference . . . to an action of the Board means an action of the Chair, another Board member, or Board staff acting at the direction of a Board member." 45 C.F.R. § 16.2(a). Furthermore, the specific regulation regarding the action at issue in this case—the rejection of Plaintiff's appeal—provides as follows:

> Within ten days after receiving the notice of appeal, the Board will send an acknowledgment, enclose a copy of these procedures, and advise the appellant of the next steps. The Board will also send a copy of the notice of appeal, its attachments, and the Board's acknowledgment to the respondent. If the Board Chair has determined that the appeal does not meet the conditions of § 16.3 or if further information is needed to make this determination, *the Board will notify the parties at this point*.

45 C.F.R. § 16.7(b) (emphasis added). Contrary to the position taken by Defendant, this regulation suggests that a rejection of an appeal is a type of Board action, and not merely an action by the Chair of the Board.

As a more substantive matter, however, the reasoning of *Athens* and *Auburn* apply directly to the jurisdictional question in this case. Were the Court to hold that a decision to decline jurisdiction over an appeal was not subject to judicial review under section 1316(e)(2)(C), then the Board would be free to escape judicial review by dismissing appeals on jurisdictional grounds, rather than on the merits—that is, the exact concern raised by the D.C. Circuit in *Athens* and *Auburn*. Furthermore, regardless of whether such a decision is issued by three members of the Board, or solely by the Chair, there is no real disagreement over the fact that the decision is final and ripe for judicial review. The

Rejection Letter, for instance, has all the hallmarks of a final legal decision and makes no mention of further administrative proceedings.

Finally, contrary to Defendants' assertions, *Auburn* makes clear that the availability of subject-matter jurisdiction in this case does not hinge upon whether Plaintiff complied with administrative filing deadlines in the proceedings below. *Auburn*, 642 F.3d at 1147 (holding that judicial review was available so long as the threshold requirements of the statute providing for judicial review were met, regardless of whether an administrative filing deadline had been met); *compare* Def.'s Mem. at 3 (claiming that "judicial review under the Medicaid statute is available only to States that exhaust their administrative remedies"). Accordingly, the Court concludes that the Rejection Letter is a "decision of the Board," and that Plaintiff filed this action within 60 days of the issuance of the Rejection Letter. This means that the "threshold requirements" of section 1316(e)(2)(C) have been met, and consequently that the Court has subject-matter jurisdiction pursuant to section 1316(e)(2)(C) to exert judicial review over the Board's decision to decline jurisdiction over Plaintiff's appeal, as memorialized in the Rejection Letter. *Athens*, 686 at 993.

Because the Court finds that it has subject-matter jurisdiction pursuant to section 1316(e)(2)(C), Plaintiff's other arguments regarding subject-matter jurisdiction are left unaddressed.

### B. Plaintiff Has Stated a Plausible Claim

The parties agree that the APA provides the appropriate standard of review for assessing a claim under section 1316(e)(2)(C). Defs.' Reply at 9 ("the APA supplies the standard of review for . . . judicial review under 42 U.S.C. § 1316"); Pl.'s Mem. at 12–13 (contending that section 1316(e)(2)(C) merely codified the prior practice of Board

decisions being reviewed pursuant to the APA). Furthermore, the analogous Medicare statute—section 42 U.S.C. § 1395oo(f)(1)—expressly provides that judicial review should be conducted pursuant to the APA.

Section 706(2)(A) of the APA empowers courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A). Plaintiff has stated a plausible claim that the decision of the Board was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." Plaintiff alleges that although it missed the deadline for seeking reconsideration of the disallowance determination by two-weeks, CMS improperly rebuffed its request to reconsider that determination because it erroneously held that "the agency does not have the authority to allow reconsideration beyond the 60 day time period allowed by statute." Compl. ¶ 38 (internal quotation marks and alterations omitted). The Supreme Court has held that an analogous filing deadline in the Medicare statute discussed above is not jurisdictional, meaning that the Secretary was permitted to extend the Medicare deadline for "good cause shown." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 149 (2013). Plaintiff alleges that the Rejection Letter failed to recognize CMS's error in holding that the time-limit for seeking reconsideration was jurisdictional and that it lacked authority to grant an extension, Compl. ¶ 43, and that the Rejection Letter further erred because it failed to recognize that once Delaware "elected to seek reconsideration, [it was required] to complete or withdraw from the process before seeking Board review," Compl. ¶ 42 (citing 42 C.F.R. § 430.42(b)(6)).

As a result of these errors, Plaintiff alleges that the Board improperly determined that Plaintiff filed its appeal "more than one year and three months late." Compl. ¶ 42 Under Plaintiff's interpretation of the law, the appeal to the Board was timely because it was filed within 60 days of CMS's final determination to not allow for reconsideration, *Id.* ¶ 40; and although the request for reconsideration was late, it was only two weeks late, and Plaintiff contends that CMS had authority to provide for a good cause extension of the reconsideration deadline. Notably, the Rejection Letter recognized the availability of a good cause extension, but found that it was unavailable in part due to the substantial length of the delay—in the Board's view, one year and three months. Rejection Letter, at 3 ("Delaware claims it had good reason to delay its appeal for 15 months based on the following grounds . . . . An extension of the appeal deadline would not be justified here because Delaware has not given a good reason for its *protracted* delay." (emphasis added)). If the actual delay is as Plaintiff claims—only two weeks—then the Board's decision seemingly rests on a patently erroneous determination. Finally, the Court is unmoved by Defendants' contention that Plaintiff has not stated a viable claim because it failed to properly exhaust its administrative remedies. *See* Defs.' Reply at 16. The very nature of Plaintiff's claim is that Defendants erred in not affording it administrative relief. Were the Court to hold otherwise, then no challenge could be brought based on an agency's refusal to hear a claim for untimeliness, which would be contrary to the D.C. Circuit's holdings in *Athens* and *Auburn*. As a result, Plaintiff has plausibly alleged that the Rejection Letter was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and accordingly, has stated a plausible claim under section 1316(e)(2)(C) with respect to the Board's decision to decline jurisdiction over Plaintiff's appeal due to untimeliness.

### C. Common Law Claims

Because the Court finds that Plaintiff has stated a viable claim under section 1316(e)(2)(C) and the applicable APA standard of review, Plaintiff's unjust enrichment claim, which sounds in equity, shall be dismissed without prejudice. "It is a basic doctrine of equity jurisprudence that courts of equity should not act when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (internal quotation marks and alterations omitted). Here, the Court finds that adequate relief at law may be available pursuant to section 1316(e)(2)(C), and consequently, Plaintiff is not yet faced with a situation in which it lacks "an adequate remedy at law." This, Plaintiff appears to recognize, if not concede. Pl.'s Opp'n at 22 ("While Defendants are correct that an adequate remedy at law may defeat an equitable claim, such a claim cannot be defeated by the availability of *any* remedy at law." (emphasis in original)).

This leaves Plaintiff's claim for "money had and received." *See* Compl., Count V. Plaintiff contends that this is not an equitable claim, but rather one at law. *See* Pl.'s Opp'n at 23. The Supreme Court has noted that "'a court of the United States will not sustain a bill in equity to obtain only a decree for the payment of money by way of damages, when the like amount can be recovered at law in an action . . . for money had and received.'" *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 47–48 (1989) (citing *Buzard v. Houston*, 119 U.S. 347, 352 (1886)). Plaintiff also cites an out-of-circuit authority, which states that "[i]t is not clear that all jurisdictions would deem this claim an equitable one or impose a requirement that no adequate alternative remedy at law exist for recovery for money had and received." *Turney v. Dz Bank AG Deutsche Zentral Genossenschaftsbank*, No. 09-

2533-JWL, 2010 WL 3735757, at *9 (D. Kan. Sept. 20, 2010). Plaintiff, however, has provided no choice-of-law analysis, and the law of the District of Columbia makes no distinction between actions for unjust enrichment and for money had and received. *Chase Manhattan Bank v. Burden*, 489 A.2d 494, 497 n.8 (D.C. 1985) (holding that the two causes of action are "essentially the same"). In any event, regardless of whether an action for money had and received is "at law" in some general sense, the claim in this case sounds in equity. The Complaint seeks only equitable relief and contains no money demand. *See* Compl., Request for Relief. And if there were a money demand, it is unclear that this Court would have jurisdiction over the claim. Plaintiff has espoused no theory as to how Defendants have waived their sovereign immunity for *money damages*, rather than equitable relief. *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) ("[j]urisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity"); Pl.'s Opp'n Mem. at 22 (contending that waiver of sovereign immunity against Defendants is supplied by the APA, but then noting that such waiver applies to suits "seeking relief *other than money damages*" (citing 5 U.S.C. § 702)). Finally, jurisdiction for a pure money damages claim would likely lie only with the United States Court of Federal Claims. The Tucker Act provides that court with "exclusive" jurisdiction, where the amount sought exceeds $10,000, "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Kidwell v. Dep't of Army, Bd. for Correction of Military Records*, 56 F.3d 279, 283 (D.C. Cir. 1995) (internal quotation marks omitted; citing 28 U.S.C. § 1491); *cf. Bowen*,

487 U.S. at 910 n.48 (noting that jurisdiction would not lie solely with the Court of Federal Claims where monetary relief is sought incident to other forms of relief under the APA).

Accordingly, Plaintiff's claims for unjust enrichment and for money had and received are dismissed without prejudice.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, Defendants' [13] Motion to Dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court has subject-matter jurisdiction under 42 U.S.C. § 1316(e)(2)(C) to exert judicial review over the Board's decision to reject Plaintiff's appeal. Furthermore, under a standard of review set by the APA, Plaintiff has stated a plausible claim that the Board's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. However, Plaintiff's common law claims for unjust enrichment and for money had and received are dismissed without prejudice. Finally, given the composition of the remaining claims, Defendants CMS and the Administrator are dismissed from this lawsuit without prejudice.

      /s/                             
COLLEEN KOLLAR-KOTELLY
United States District Judge
